**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

JACOB MATTHEW,
Plaintiff,
v.
CHRISTOPHER PALOMARES et al.,
Defendants.

Case No.: 25-cv-01665-DMS-MSB

**ORDER SCREENING PLAINTIFF'S SECOND AMENDED COMPLAINT**

On December 18, 2025, Plaintiff Jacob Matthew, proceeding *pro se*, filed a Second Amended Complaint ("SAC") against Defendants Officer Christopher Palomares, Officer Tim Dinger, Sheriff's Deputy John Cashman, and Automotive Specialists. (Second Am. Compl. ("SAC"), ECF No. 17). Plaintiff brings constitutional and "equitable" claims arising from a June 20, 2025 traffic stop on the San Pasqual Reservation and the subsequent impoundment of the vehicle he was driving. (*Id.* at 1, 7). As Plaintiff is proceeding *in forma pauperis* ("*IFP*"), the Court is required to screen the SAC pursuant to 28 U.S.C. § 1915(e)(2). (*See* ECF No. 8). For the following reasons, the Court *sua sponte* dismisses causes of action one, three, four, five, and six, and directs the U.S. Marshal to effectuate service of the SAC for the remaining claim.

## I. BACKGROUND

Plaintiff alleges that on June 20, 2025, he was driving a black 2014 Lincoln MKS with expired Texas license plates near the Valley View Casino on the San Pasqual Reservation in California. (SAC ¶¶ 9, 11).[1] At approximately 8:45 AM, tribal police officers allegedly ran Plaintiff's plates and pulled him over. (*Id.* ¶ 13). Plaintiff alleges that Defendant Officers Palomares and Dinger detained him for lack of registration and driving without a valid driver's license in violation of the California Vehicle Code. (*Id.* ¶ 11). Plaintiff alleges that when he informed the Officers he was "traveling privately," they "retaliated by shouting 'sovereign citizen' accusations and accusing Plaintiff of 'playing games.'" (*Id.* ¶ 14). Plaintiff alleges that at some point Defendant Deputy Cashman from the San Diego County Sheriff's Office arrived on the scene but failed to intervene in the situation. (*Id.* ¶ 19). Plaintiff alleges that Officers Palomares and Dinger handcuffed him, placed him against a police cruiser in the hot sun for approximately forty minutes, patted him down, and seized his wallet and other private property. (*Id.* ¶ 15). Plaintiff further alleges that the Officers interrogated him without *Miranda* warnings, "coercing answers about past arrests, tattoos, military service, residency, and activities." (*Id.* ¶ 16). The Officers allegedly searched the vehicle without consent, "exposing a patent application for a dual therapy for alcoholism and liver disease (valued at $1.35 billion in projected first-year sales . . .), scattering papers, and requiring 20 minutes to reorganize." (*Id.* ¶ 18). Officer Palomares allegedly issued Plaintiff a Notice to Appear in San Pasqual Tribal Court for violations of tribal code section 3.07(D)(7)(e) requiring a driver's license and registration. (*Id.* ¶ 20). Officer Palomares then allegedly called "Hector," an agent of Defendant Automotive Specialists to tow the vehicle. (*Id.* ¶¶ 21–22). Plaintiff was released and later texted Hector, who confirmed that the vehicle could not be retrieved without tribal police release, state obligations, and fees. (*Id.* ¶ 22). Plaintiff alleges that at an August 14,

---

[1] Plaintiff alleges that the vehicle is "titled via a trust transfer grant deed to the Jacob Matthew: Jensen Family Trust." (*Id.* ¶ 9).

2025 hearing in tribal court, the prosecution stated that the vehicle was impounded pursuant to California Vehicle Code section 22651 because its registration had been expired for more than six months. (*Id.* ¶ 26).

On July 7, 2025, Plaintiff filed this action with a Motion to Proceed *IFP*, Motion for a Temporary Restraining Order, Motion for a Preliminary Injunction, Motion for an In-Chambers Conference, and Motion to Seal Case. (ECF Nos. 1–3, 5–7). The Court subsequently granted Plaintiff's Motion to Proceed *IFP* and *sua sponte* dismissed the Complaint, denying the requests for a temporary restraining order, preliminary injunction, and to seal the case. (ECF No. 8). The Court reasoned that Plaintiff had failed to allege that Defendants were acting under color of state law as required by 42 U.S.C. § 1983, but gave Plaintiff leave to amend. (*Id.* at 4). On July 22, 2025, Plaintiff filed a First Amended Complaint ("FAC") with a Motion for a Preliminary Injunction, Motion to Clarify Equitable Status, and a Motion to File Documents Under Seal. (ECF Nos. 9–12). On August 25, 2025, Plaintiff filed an Ex Parte Motion for Leave to File Supplemental Pleading. (ECF No. 14). On December 1, 2025, the Court found the FAC sufficient to survive screening, denied the preliminary injunction request, declined to "clarify equitable status," denied the request to file under seal, and gave Plaintiff twenty-one days to file an amended complaint with the proposed additions. (ECF No. 16). On December 18, 2025, Plaintiff filed the SAC alleging six causes of action: (1) a First Amendment retaliation claim brought under § 1983 against Officer Palomares, Officer Dinger, and Deputy Cashman; (2) a Fourth Amendment unreasonable search and seizure claim brought under § 1983 against all Defendants; (3) a Fifth and Fourteenth Amendment due process claim brought under § 1983 against Officer Palomares, Officer Dinger, and Deputy Cashman; (4) an "Equitable Wrongful Deprivation of Unalienable Right to Liberty" claim against Officer Palomares and Officer Dinger; (5) an "Equitable Wrongful Deprivation of Unalienable Right to Property 4th Amendment" claim against Officer Palomares, Officer Dinger, and Automotive Specialists; and (6) an "Equitable Wrongful Deprivation of Privacy 9th Amendment" claim against Officer Palomares and Officer Dinger. (SAC ¶¶ 27–38).

## II. LEGAL STANDARD

Under 28 U.S.C. § 1915(e)(2), the Court must screen an *IFP* complaint and dismiss the case if, at any time, it determines that the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (confirming § 1915(e)(2)(B) applies to non-prisoners as well). A complaint "is frivolous where it lacks an arguable basis either in law or in fact" and malicious where "it was filed with the intention or desire to harm another." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005) (citation modified). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Accordingly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Finally, dismissal is warranted when the plaintiff seeks monetary relief against an immune defendant, as long as the court "has sufficient information to make a determination on immunity." *Chavez v. Robinson*, 817 F.3d 1162, 1167 (9th Cir. 2016).

## III. DISCUSSION

The Court's December 1, 2025 Order found that Plaintiff had cured the state-actor deficiency previously identified by the Court. (*See* ECF Nos. 8, 16). However, as the SAC supersedes previous complaints and § 1915(e)(2) requires courts to dismiss complaints any time they are found to be deficient, the Court now subjects the SAC to a full § 1915

screening. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015). Accordingly, the Court will examine each cause of action to determine whether it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant with immunity from such relief.[2]

**A. Section 1983 Claims**

Plaintiff's first three causes of action are brought under § 1983. (SAC ¶¶ 27–32). "Section 1983 provides remedies for deprivations of rights under the Constitution and laws of the United States when the deprivation takes place under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (citation modified); (*see* ECF Nos. 8, 16). As discussed in the Court's previous order, "actions taken under color of tribal law are beyond the reach of § 1983." *R.J. Williams Co. v. Fort Belknap Hous. Auth.*, 719 F.2d 979, 982 (9th Cir. 1983); (*see* ECF No. 8 at 4). As such, the Officers may "be held liable under § 1983 only if they were acting under color of *state,* not tribal, law." *Pistor v. Garcia*, 791 F.3d 1104, 1114–15 (9th Cir. 2015). Plaintiff has plausibly alleged that the Officers were acting under the color of state law by pointing to a cross-deputization agreement between San Diego County and the San Pasqual Band, the Officers' enforcement of state law, and an impoundment justified by the California Vehicle Code. (SAC ¶¶ 11, 26); *cf. Bressi v. Ford*, 575 F.3d 891, 895–97 (9th Cir. 2009) (holding that tribal officers were acting under the color of state law when they pulled over a non-member driving on a public highway and gave him a state-law citation). Deputy Cashman, a San Diego County Sheriff's Deputy, is properly identified as a state actor. (SAC ¶ 11). Finally, Automotive Specialists may be considered a state actor only if it "acted in concert in effecting a particular deprivation of constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 444–45 (9th

---

[2] Plaintiff sues Officer Palomares, Officer Dinger, and Deputy Cashman in their individual capacities. (SAC 1). The Court does not presently have sufficient information to evaluate Defendants' immunity from the relief sought.

Cir. 2002) (citation modified) ("The Supreme Court has articulated four tests for determining whether a private individual's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test. Only the joint action test is relevant here." (citation omitted)). "A plaintiff may demonstrate joint action by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Id.* at 445. To be liable as a co-conspirator, the private party must share the common objective of violating the plaintiff's constitutional rights. *Id.* Here, Plaintiff does not plausibly allege that Automotive Specialists shared in the common goal of violating Plaintiff's rights. However, the allegation that the Officers called a towing operator they worked with frequently is sufficient to demonstrate joint action for purposes of this screening. (SAC ¶ 22); *see, e.g.*, *Stypmann v. City of San Francisco*, 557 F.2d 1338, 1341–42 (9th Cir. 1977) ("A police officer makes the initial determination that a car will be towed and summons the towing company. The towing company tows the vehicle only at the direction of the officer. . . . The towing company detains the vehicle and asserts the lien for towing and storage charges pursuant to a statutory scheme designed solely to accomplish the state's purpose of enforcing its traffic laws. Thus, the private towing company is a willful participant in a joint activity with the State or its agents." (citation modified)). For those reasons, each of the Defendants meets the threshold requirement of being a state actor under § 1983.

1. <u>First Amendment Claim</u>

Plaintiff's first claim, brought under § 1983, alleges that Officer Palomares, Officer Dinger, and Deputy Cashman violated his "First Amendment right to free expression by retaliating against his assertion of equitable status and private capacity." (SAC ¶ 28). "To bring a First Amendment retaliation claim, the plaintiff must allege that (1) [they] engaged in constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct." *Ariz. Students'*

*Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (citation modified); *see Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019) (finding there must be but-for cause between the defendant's retaliatory animus and the plaintiff's subsequent injury). Here, Plaintiff alleges that the Officers and Deputy responded to the statement he was "traveling privately" with "accusations and sarcastic dismissal." (SAC ¶¶ 14, 28). However, these allegations do not rise to the level of chilling a person of ordinary firmness. *See, e.g.*, *Giddens v. City of Suisun*, No. 2:14-cv-00943 TLN AC (PS), 2018 WL 705535, at *10 (E.D. Cal. Feb. 5, 2018) (finding that insults are not enough to silence a person of ordinary firmness). Furthermore, to the extent the retaliatory act is the stop or citation, Plaintiff himself admits he was driving with expired registration and without a driver's license. (*Id.* ¶¶ 11, 17). Thus, there is no but-for connection between the alleged "retaliatory animus" and Plaintiff's subsequent injury. *Nieves*, 587 U.S. at 398–99. Accordingly, Plaintiff's First Amendment claim is not plausibly alleged and fails to state a claim upon which relief may be granted. *See* § 1915(e)(2)(B)(ii).

2. <u>Fourth Amendment Claim</u>

Plaintiff's second claim, brought under § 1983, alleges that Defendants violated his Fourth Amendment rights "by detaining him for 40 minutes, searching his [vehicle], and seizing it without probable cause, running his Texas plates while stopped in traffic." (SAC ¶ 30). Plaintiff alleges that Deputy Cashman failed to intervene and that Automotive Specialists conspired with the Officers to effect the seizure. (*Id.*). However, Plaintiff does not plausibly allege that the initial stop was unlawful because running a license plate is not a Fourth Amendment search and information that the vehicle's registration had lapsed supplied reasonable suspicion for a stop. *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1153 (9th Cir. 2007) ("We hold that a license plate check does not constitute a Fourth Amendment search."); *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) ("Because stopping an automobile and detaining its occupants, even if only for a brief period and for a limited purpose, constitutes a seizure under the Fourth Amendment, an official must have individualized reasonable suspicion . . . ." (citation modified)).

Even where an initial stop is lawful, the "traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation" unless there is reasonable suspicion of an independent offense that justifies extending the stop. *United States v. Steinman*, 159 F.4th 550, 561 (9th Cir. 2025) (citation modified). Furthermore, "handcuffing substantially aggravates the intrusiveness of an otherwise routine investigatory detention and is not part of a typical *Terry* stop." *Washington v. Lambert*, 98 F.3d 1181, 1188 (9th Cir. 1996) (citation modified). Here, Plaintiff alleges that the Officers, without cause, handcuffed him, placed him against a police cruiser in the sun for forty minutes, patted him down, seized his wallet, and interrogated him. (SAC ¶¶ 15–16). Plaintiff further alleges that the Officers searched the vehicle without his consent. (*Id.* ¶ 18). Taking these allegations as true, Plaintiff's SAC is sufficiently plead "to warrant ordering [Defendants] to file an answer." *Wilhelm v. Rotman*, 680 F.3d 1113, 1116 (9th Cir. 2012). Plaintiff has plausibly alleged that this search and seizure violated the Fourth Amendment. Further, Plaintiff has plausibly alleged a failure to intervene claim against Deputy Cashman. "Police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (citation modified). Officers may be held liable "only if they had an opportunity to intercede." *Id.* Here, Plaintiff has plausibly alleged that Deputy Cashman was present throughout the incident but failed to prevent the unconstitutional conduct. (SAC ¶ 19). Unlike situations that occur within a matter of seconds, Plaintiff describes a prolonged encounter involving handcuffing, searching, and questioning. (*Id.*). Thus, Deputy Cashman would have had an opportunity to intercede and this derivative claim likewise survives screening.

Finally, Plaintiff has not plausibly alleged that the impoundment of the vehicle was unlawful. Under the community caretaking exception to the Fourth Amendment, officers may impound a vehicle "if the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle, [or] if it is necessary to remove the vehicle from an exposed or public location." *Miranda v. City of Cornelius*, 429 F.3d 858, 865 (9th Cir.

2005). Here, Plaintiff admits that he was driving with expired registration and did not have a driver's license, a circumstance under which California law expressly authorizes removal. (SAC ¶¶ 11, 17, 26); Cal. Veh. Code § 22651 (West 2026). Accordingly, Plaintiff has not plausibly alleged that the impoundment of the vehicle was unlawful. As this is the only theory of liability against Automotive Specialists, claim two is entirely dismissed as to this Defendant. Plaintiff's second cause of action survives only as to the unreasonable search and seizure claim after the traffic stop had commenced.

3. Fifth and Fourteenth Amendment Claims

Plaintiff's third claim, brought under § 1983, alleges that Officer Palomares, Officer Dinger, and Deputy Cashman violated his Fifth and Fourteenth Amendment due process rights by "interrogating and coercing answers without Miranda warnings." (SAC ¶ 32); *see Miranda v. Arizona*, 384 U.S. 436 (1966). However, "a violation of *Miranda* does not necessarily constitute a violation of the Constitution" and thus does not "confer a right to sue under § 1983." *Vega v. Tekoh*, 597 U.S. 134, 150, 152 (2022). Instead, *Miranda*'s purpose is to determine whether statements should be suppressed at a criminal trial. *Id.* at 151. As there is no relevant criminal proceeding here, *Miranda* serves no purpose. Accordingly, Plaintiff has failed to plausibly allege a due process violation. As this claim fails, so does the related failure-to-intervene claim against Deputy Cashman.

**B. Equitable Claims**

Plaintiff's last three causes of action assert "equitable" claims for the deprivation of his right to liberty, property, and privacy. (SAC ¶¶ 33–38). However, these are not recognized causes of action. *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("[A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983."). Even liberally construed as claims under § 1983, causes of action four and five are duplicative of causes of action one and two. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed . . . ." (citation modified)). Furthermore, although the sixth cause of action invokes the Ninth Amendment, it "has never been recognized as independently securing any constitutional right, for

purposes of pursuing a civil rights claim." *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986). Therefore, claims four through six are dismissed for failure to state a claim upon which relief may be granted. *See* § 1915(e)(2)(B)(ii).

## IV. CONCLUSION AND ORDER

For the foregoing reasons, causes of action one, three, four, five, and six are dismissed without leave to amend. Plaintiff has twice amended his complaint and it is clear that the identified deficiencies are legal in nature and cannot be cured by further amendment. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (explaining that dismissal without leave to amend is proper when amendment would be futile). Plaintiff's second cause of action survives on the unlawful search and seizure theory against Officer Palomares, Officer Dinger, and Deputy Cashman.

The Court **ORDERS**:

1. The Clerk of Court shall issue a summons and forward it to Plaintiff with a blank U.S. Marshal Form 285, a certified copy of the operative complaint, and a certified copy of this Order. Plaintiff must fill out U.S. Marshal Form 285 as completely and accurately as possible with the addresses where Defendants may be found or subject to service. *See* CivLR 4.1c. Plaintiff must then return the form to the U.S. Marshal pursuant to the Clerk's instructions.

2. The U.S. Marshal shall serve a copy of the operative complaint, summons, and this Order upon Defendants, as directed by Plaintiff on U.S. Marshal Form 285. All costs of service shall be advanced by the United States.

3. Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading or other document submitted for consideration of the Court. Plaintiff shall include with the original paper to be filed with the Clerk of the Court a certificate stating the manner in which a true and correct copy of any document was served on the Defendants or counsel for Defendants and the date of service. Any paper received by a district judge or magistrate judge which has not been

filed with the Clerk or which fails to include a Certificate of Service will be disregarded.

**IT IS SO ORDERED.**

Dated: August 12, 2026

Hon. Dana M. Sabraw
United States District Judge